NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

LINETTE PEREZ,                  :

        Petitioner,     :
                                  Civil Action No. 03-4610(JWB)
    v.                      :   (Criminal No. 99-100(JWB))

UNITED STATES OF AMERICA,       :       **O P I N I O N**

        Respondent.     :

**APPEARANCES**:

    LINETTE PEREZ, pro se
    No. 22315-050
    FCI Danbury
    Pembroke Station
    Route 37
    Danbury, Connecticut  06811

    CHRISTOPHER J. CHRISTIE
    United States Attorney
    By:  Richard O.I. Brown
         Assistant United States Attorney
    Federal Building
    970 Broad Street
    Newark, New Jersey  07101
    (Attorney for Respondent)

**BISSELL,** Chief Judge

        This matter comes before the Court on a motion filed by Petitioner Linette Perez pursuant to 28 U.S.C. § 2255 seeking to vacate, set aside or correct her sentence.  Petitioner sets forth ineffective assistance of counsel as grounds for this motion. For the reasons stated below, Petitioner's section 2255 motion is

DENIED, in its entirety.

## FACTUAL & PROCEDURAL HISTORY

The foregoing facts have been set forth by the Court of Appeals for the Third Circuit's decision in United States v. Perez, 280 F.3d 318 (3d Cir.), cert. denied 537 U.S. 859 (2002). The Court, however, will reiterate key facts that are necessary to place Petitioner's motion in perspective.

**A.   The Indictment**

In February 1999, Linette Perez ("Perez") participated in a drug-trafficking operation where co-conspirators smuggled large quantities of crystal methamphetamine into the United States from the Philippines, where it had been manufactured, and distributed the drugs in New Jersey and New York.  Perez, 280 F.3d at 323-27. On March 1, 1999, a federal grand jury returned a one-count indictment charging Perez and seven co-defendants with conspiring from at least as early as August 1998 to February 26, 1999 to distribute and to possess with intent to distribute more than one kilogram of methamphetamine, in violation of 18 U.S.C. § 841(a)(1) and § 846.  Id. at 326.  On October 20, 1999, co-defendant Lirio Del Rosario ("Del Rosario"), the head of the drug-trafficking operation, pled guilty to the indictment pursuant to a plea agreement that did not require his cooperation with the United States Government ("the Government").  Id.  Three other defendants - Augustin Daluro, Prajedo Almiranez and Arturo

Zoletta - pled guilty in August and October of 1999, pursuant to cooperating plea agreements.  Id.  The remaining four defendants - Perez, Juancho Alcantara, Edmundo Batoon and Roland Abaia - were tried jointly on the charge in the indictment.  Id.

**B.   The Trial**

Substantial evidence demonstrated, at trial, that Perez furthered the conspiracy by smuggling methamphetamine into United States from the Philippines.  Co-defendant Daluro, for example, testified that in a phone conversation Del Rosario indicated that he was preparing travel documents for Perez to go overseas to pick up a shipment.  (Gov't's Answer and Mem. in Opp'n to the Pet'r's Mot. for Relief Pursuant to 28 U.S.C. § 2255 , Ex. B at 4.70.)  In addition, co-defendant Del Rosario originally told investigators that he sent Perez to the Philippines, as a courier to pick up drugs and return them to his home New York.  (Gov't's Answer and Mem. in Opp'n to the Pet'r's Mot. for Relief Pursuant to 28 U.S.C. § 2255 , Ex. C at 3-4.)  Perez was to arrive through JFK International Airport on an ASIANA air flight.  (Id.)  Also, Nesor Uy, an unindicted co-conspirator, testified that Del Rosario provided him with money and guns, with the instructions to pick up Perez at JFK International Airport arriving on an ASIANA air flight.  (Gov't's Answer and Mem. in Opp'n to the Pet'r's Mot. for Relief Pursuant to 28 U.S.C. § 2255 , Ex. B at 4.207-2.09.)  Further, evidence demonstrated that Alcantara was

-3-

present in Del Rosario's apartment on February 25, 1999, the day of his arrest, to obtain a portion of a ten-kilogram shipment of methamphetamine that Perez had just smuggled into the United States from the Philippines, to distribute the drugs.  Id. at 4.205-4.211; 5.53-5.56; 5.87-5.88; 7.119-7.145.  Alcantara remained in Del Rosario's apartment on that day while officers observed significant drug trafficking taking place from the apartment.  Perez, 280 F.3d at 324-26.  When Alcantara and Del Rosario were arrested in the apartment that day, Del Rosario was in the process of dividing the shipment and allocating it to the distributors of the organization.  Id.  Moreover, the arresting officers observed one hundred grams of methamphetamine in plain view on top of the television set in Del Rosario's living room.  Id.

     Following the arrest, after waiving his Miranda rights, Del Rosario admitted to participating in the drug-trafficking conspiracy.  (Gov't's Answer and Mem. in Opp'n to the Pet'r's Mot. for Relief Pursuant to 28 U.S.C. § 2255 at Ex. C.)  Del Rosario informed investigators that Perez smuggled multiple kilograms of methamphetamine from the Philippines.  (Id. at ¶¶ 3-4.)  He also admitted that he sold methamphetamine to Alcantara and others in New York.  (Id. at ¶ 6.)  Additionally, he stated that Alcantara was at his home on February 25, 1999, in order to pick up a quantity of methamphetamine from the shipment Perez had

delivered.  (Id.)

Months following his post-arrest statement, Del Rosario altered his testimony with regard to Perez and informed investigators that someone else had smuggled the methamphetamine into the United States.  Subsequently, Perez's attorney sought to have Del Rosario testify at trial on behalf of Perez.  Del Rosario was then brought to this Court for the Court to determine whether he would be willing to testify.  After discussing the matter with his attorney, Del Rosario, outside the presence of the jury, asserted his Fifth Amendment privilege against self-incrimination and refused to answer any questions.  (Gov't's Answer and Mem. in Opp'n to the Pet'r's Mot. for Relief Pursuant to 28 U.S.C. § 2255, Ex. B. at 7.4-7.33.)

On November 11, 1999 the jury returned guilty verdicts against Perez, Alcantara and Batoon.  (Id., Ex. D at No. 108.)

**C.   Sentencing**

On March 21, 2000, this Court sentenced Perez to be imprisoned for a term of 235 months.  (Id., Ex. E, Judgment of Conviction.)  Perez, Alcantara and Batoon filed timely appeals.  (Id., Exs. F, G, H, & I.)

**D.   The Appeal**

The Third Circuit affirmed the convictions and sentences of Perez and her co-defendants.  Perez, 280 F.3d at 354.  Alcantara filed a petition for certiorari on June 10, 2002, which was

denied by the Supreme Court on October 7, 2002.  Perez v. United States, 537 U.S. 859 (2002).

**F.   Perez' Section 2255 Petition**

On September 23, 2003, Perez filed the instant pro se petition to vacate, set aside or correct her sentence pursuant to 28 U.S.C. § 2255.  (Pet'r's Motion to Vacate Sentence and Conviction).  Specifically, Perez claims that she was denied effective assistance of counsel because: (1) her attorney failed to discover exculpatory evidence that Del Rosario, the Government's witness, possessed; and (2) her attorney failed to elicit exculpatory statements from Arturo Zoletta ("Zoletta") on cross examination.

**DISCUSSION**

**I.   Standard for a §2255 Motion**

Pursuant to 28 U.S.C. § 2255, a prisoner in custody under sentence of a federal court may move the sentencing court to vacate, set aside or correct a sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255; Brown v. United States, 75 F. Supp. 2d 345, 347-48 (D.N.J. 1999); Scibetta v. United States, 32 F. Supp. 2d 711, 713 (D.N.J. 1998).  "Relief under this provision is

generally available only in exceptional circumstances to protect against a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." U.S. v. Gordon, 979 F.Supp. 337, 339 (E.D.Pa. 1997).

A § 2255 motion, however, generally "may not be employed to relitigate questions which were raised and considered on direct appeal." U.S. v. DeRewal, 10 F.3d 100, 105 n.4 (3d Cir. 1993)(quoting Barton v. U.S., 791 F.2d 265, 267 (2d Cir. 1986)). Moreover, with regard to those claims which were never raised on direct appeal, the Supreme Court's decision in U.S. v. Frady, 456 U.S. 152 (1982), reaffirmed the "cause and actual prejudice standard" which was first enunciated in Davis v. U.S., 411 U.S. 233 (1973). DeRewal, 10 F.3d at 103. Under this standard, a petitioner may only raise claims on collateral review that have not been raised on direct appeal if the defendant can show either "cause" or "actual prejudice" resulting from the errors of which he or she complains. Id. (citing Frady, 465 U.S. at 157). The standard specifically requires that "a convicted defendant [demonstrate] both (1) 'cause' excusing his . . . procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." Id. (quoting Frady, 456 U.S. at 168)). It is well recognized, however, that a claim of ineffective assistance of counsel should be raised under Section 2255 rather

than on direct appeal.  <u>DeRewal</u>, 10 F.3d at 103-04.

**A.    <u>Perez' Ineffective Assistance of Counsel Claim</u>**

Perez asserts her section 2255 claim under the theory of ineffective assistance of counsel.  The Sixth Amendment guarantees any defendant in a criminal case "the Assistance of Counsel for his defense."  U.S. CONST. amend. VI; <u>Cuyler v. Sullivan</u>, 446 U.S. 335, 344 (1980).  A defendant has a Sixth Amendment right not just to counsel, but to a "'reasonably effective assistance' of counsel."  <u>United States v. Day</u>, 969 F.2d 39, 42 (3d Cir. 1992) (quoting <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)).

In <u>Strickland</u>, the Supreme Court established a two-prong test that a petitioner must satisfy in order to obtain post-conviction relief due to ineffective assistance of counsel.  First the petitioner must demonstrate that counsel's performance fell below an objective level of reasonable professional service, as measured by prevailing professional norms.  <u>Strickland</u>, 466 U.S. at 670, 688.  Second, the petitioner must show that absent counsel's deficient performance, the outcome of the trial would have been different.  <u>Id.</u>  There is a strong presumption that counsel's assistance falls within a range of what is considered reasonable.  <u>Id.</u> at 689.  The deciding court must make every effort to eliminate the distorting effects of hindsight and to consider counsel's assistance based on his perspective at that

time.  Id.  A petitioner must affirmatively show how the actions of his attorney deprived him of a fair trial.  Czere v. Butler, 833 F.2d 59, 63-64 (5th Cir. 1987).  He must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  Strickland, 466 U.S. at 690.  The petitioner must show that counsel's errors made the trial fundamentally unfair.  Lockhart v. Fretwell, 506 U.S. 364, 368-70 (1993).

1.  **Perez' Counsel was Not Ineffective in Failing to Discover the Alleged Exculpatory Evidence Possessed by Del Rosario**

Petitioner asserts that her counsel was ineffective for failing to discover that the person who imported the methamphetamine into the United States from the Philippines was Zoletta and not herself.  Del Rosario originally informed investigators that Perez smuggled the drugs into the United States.  (Gov't's Answer and Mem. in Opp'n to the Pet'r's Mot. for Relief Pursuant to 28 U.S.C. § 2255, Ex. C at 3-4.)  Months later, however, in a Government debriefing, Del Rosario altered the story and stated that Zoletta imported the drugs.  (Id., Ex. B at 6.35; 6.38.)

Perez' counsel knew that Del Rosario made a statement that someone other than Perez had smuggled the drugs that were found in Del Rosario's apartment.  Perez's Counsel, however, did not know the identity of the importer of the drugs.  In a post trial hearing, on February 18, 2000, this Court determined that the

-9-

Government violated its obligations to inform Perez' counsel that Del Rosario implicated Zoletta.  This Court, however, cited Hollman v. Wilson, 158 F.3d 177 (3d Cir. 1998) and other Third Circuit opinions that held that "a new trial can and should not be granted because the Court doe not determine that there is a reasonable probability had the evidence been disclosed to the defense the result of the proceeding would have been different." (Gov't's Answer and Mem. in Opp'n to the Pet'r's Mot. for Relief Pursuant to 28 U.S.C. § 2255, Ex. L at 6, lines 7-10.)  This Court further reasoned that the likelihood of Del Rosario's attribution of the importation of the Philippine drugs to Zoletta ever coming before a jury, as admissible substantive evidence, being extremely low.  (Id. at 12, lines 2-5.)  As such, the Court held that because there was no valid vehicle for the defense to admit this information before the jury for substantive consideration, there was not sufficient prejudice and there was "sufficient evidence to sustain Miss Perez' conviction."  (Id. at 12, Lines 20-21.)

   Perez' counsel's inability to discover the exculpatory evidence was not unreasonable under the prevailing professional norm.  Perez' counsel attempted to elicit the exculpatory evidence from Del Rosario.  (Gov't's Answer and Mem. in Opp'n to the Pet'r's Mot. for Relief Pursuant to 28 U.S.C. § 2255, Ex. B. at 7.4-7.33.)  When Del Rosario asserted the Fifth Amendment

-10-

privilege against self-incrimination, Perez' counsel asserted that Del Rosario should be granted immunity in order to present this evidence.  (Id.)  Accordingly, Perez' counsel's performance did not fall below the objective standard of reasonableness and/or prevailing professional norms.

Furthermore, Perez fails to demonstrate that there is reasonable probability that, absent her counsel's failure to discover the exculpatory evidence, the jury would have found her not guilty.  Substantial evidence was presented to the jury that implicated Perez as the individual who imported drugs from the Philippines.  There was testimony by co-defendants implicating Perez as the courier who transported the drugs into the United States and direct evidence that she made the trip to the Philippines.  (Id., Ex. B at 4.70; 4.207-2.09.)  Hence, it is unlikely that the jury would have found Perez not guilty based on Del Rosario's changed story, presented months later, identifying Zoletta as the importer of the drugs, in light of the substantial evidence against her.

**2. Perez's Counsel was Not Ineffective in Failing to Elicit the Exculpatory Statement from Zoletta on Cross Examination**

Perez also asserts that her counsel was ineffective for failing to elicit the exculpatory statement from Zoletta on cross examination.  Courts must give great deference to counsel's trial strategy and "judicial scrutiny of counsel's performance must be highly deferential."  Strickland, 466 U.S. at 689.  At the time

of Zoletta's cross examination, Perez' counsel was not aware that Del Rosario had implicated Zoletta as the importer of the drugs. Furthermore, Counsel's decision not to question Zoletta about who was responsible for importing the drugs was a trial strategy. The record indicates that Perez' counsel sought to avoid questions whose answers might corroborate or bolster the Government's case against his client.  (Id., Ex. B. at 3.192, 3.193.)  Thus, Perez' claim that her counsel failed to question Zoletta about the identity of the importer does not demonstrate that he was deficient or ineffective.

In addition, Perez has not established that there was a reasonable probability that, but for her counsel's failure to cross examine Zoletta about the importer, the jury would have found her not guilty.  This Court, on February 18, 2000, noted the difficulty and unlikelihood that Zoletta would have answered, or acknowledged guilt, if questioned whether he was the importer. (Id., Ex. L at 11-12.)  Moreover, Perez has not demonstrated that the jury would have rejected the substantial evidence implicating her as the smuggler of the drugs if Zoletta had answered questions with regard to the identity of the importer. Therefore, Perez has failed to demonstrate that her counsel was deficient and/or ineffective.

## CONCLUSION

For the reasons set-forth above, the grounds asserted by

Petitioner in support of her motion for relief under 28 U.S.C. § 2255, whether considered individually, collectively or in any combination, fail to demonstrate that she is entitled to have her sentence or conviction set aside.  Her motion is DENIED, in its entirety.

/s/    John W. Bissell
JOHN W. BISSELL
Chief Judge
United States District Court

DATED:  August 30, 2005